IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL DOCKET NO.: 3:05CV71

| | |
|---|---|
| LAWRENCE J. DEMARSE, )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>ANODYNE HEALTHCARE )<br>MANAGEMENT, INC., PATRICK )<br>CLIFFORD, individually, NEAL TAUB, M.D., )<br>individually, MOUNTAIN ISLAND )<br>MANAGEMENT SERVICES, L.L.C. f/k/a )<br>MOUNTAIN ISLAND URGENT )<br>CARE, L.L.C., )<br>)<br>**Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss and Brief in Support of Motion to Dismiss, both filed April 1, 2005. On April 13, 2005, Plaintiff filed his Response to Defendants' Motion to Dismiss. Defendant Anodyne Healthcare Management, Inc. filed a Reply to Plaintiff's Response on April 29, 2005. This Motion is now ripe for disposition by the Court.

Having carefully considered the arguments of the parties, the record, and the applicable authority, the Court will <u>deny</u> Defendants' Motion to Dismiss.

### I. FACTUAL AND PROCEDURAL HISTORY

For purposes of this Motion to Dismiss, the Court accepts the following facts derived from Plaintiff's First Amended Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept

1

the allegations in the complaint as true and view the complaint in the light most favorable to the plaintiff").

On March 24, 2000, Defendant Neal Taub, M.D. ("Taub"), Defendant Patrick Clifford ("Clifford"), and Plaintiff Lawrence Demarse ("Plaintiff" or "Demarse") (collectively referred to as "the Promoters"), incorporated Anodyne Healthcare Management, Inc. ("Anodyne") as a North Carolina corporation. (First Am. Compl. ¶¶ 4, 38-54). Anodyne was formed to provide case management services to injured clients needing medical care. (Feb. 17, 2005 Order, p. 2). Additionally, Anodyne was to supply follow-up services and monitor the care provided by doctors, physical therapists, and other professionals to injured clients to ensure that the clients were meeting their goals. (*Id.*).

Prior to Anodyne's corporate formation, the Promoters drafted a Business Plan. (First Am. Compl. ¶ 69; Exh. 1).[1] All of the Promoters contributed and agreed to this Business Plan. (*Id.* ¶¶ 69-80). The final revision of the Business Plan occurred on July 11, 2000. (*Id.* Exh. 1, p.7). Pursuant to this Business Plan, Demarse was Chairman of the Board and Consultant for Anodyne and was to be paid as follows:

> * Mr. Demarse is paid $75,000/Year deferred until 5/15/02 and will be paid in one payment of $150,000. Should funds not be available, Mr. Demarse will receive $75,000 in shares of stock at $1.00/share and paid $15,000/Yr for 5 years.

(*Id.* Exh. 1, p. 2). Additionally, Demarse was to receive four percent (4%) of Anodyne's stock, to be tendered upon formation of the Company. (*Id.* ¶ 67; Exh. 1, p. 3).

On January 8, 2002, Demarse expressed concern to Defendant Clifford regarding the

---

[1]Although there were three drafts of the Business Plan, Exhibit 1 to the First Amended Complaint is a true and correct copy of the final revision of the Business Plan. (First Am. Compl. ¶¶ 70-71).

legality of Anodyne's business practices. (*Id.* ¶ 86). Subsequent to that conversation, Defendant Clifford ordered Anodyne's employees to cease sharing corporate information with Demarse. (*Id.* ¶ 87). Moreover, Anodyne never paid Demarse $150,000 on or after May 15, 2002, nor did Anodyne distribute $75,000 of stock at $1.00/share to Plaintiff or pay him $15,000 for five years (*Id.* ¶¶ 57-62). Additionally, Anodyne never tendered the promised four percent (4%) of shares to Demarse. (*Id.* ¶¶ 66-68). In sum, despite the terms of the Business Plan, Anodyne did not pay Demarse a salary or any other compensation for his work in the Company. (*Id.* ¶¶ 63-64).

On July 24, 2002, Defendant Mountain Island Management Services, L.L.C. f/k/a Mountain Island Urgent Care, L.L.C. ("Mountain Island") was formed. (*Id.* ¶ 92). Defendant Taub is a member of Defendant Mountain Island and Defendant Clifford is president of Clifford Vocational Services, Inc, which is a member of Mountain Island. (*Id.* ¶¶ 94-95). Between July 24, 2002 and September 23, 2004, Defendants Clifford and Taub, as majority shareholders and officers of Anodyne, sold substantially all of Anodyne's assets to Defendant Mountain Island. (*Id.* ¶ 93). In making such sale, Defendants Clifford and Taub intentionally deprived Demarse of the payments due pursuant to the Business Plan. (*Id.* ¶ 97).

Consequently, Plaintiff filed his Complaint [2] in the United States District Court for the Middle District of Florida (Orlando), alleging the following causes of action: breach of contract (Counts One and Two); unpaid wages (Count Three); quantum meruit (Count Four); tortious interference with business relationship (Counts Five and Six); civil conspiracy to tortiously

---

[2] Plaintiff filed his initial Complaint on September 21, 2004, against Defendant Anodyne only. Subsequently, on September 24, 2004, Plaintiff amended his Complaint to add Defendants Clifford, Taub, and Mountain Island, as well as to include Counts 5 through 8.

interfere with business relationship (Count Seven); and an action for accounting (Count 8).[3] On November 10, 2004, Defendants' filed a Motion to Dismiss for Lack of Personal Jurisdiction and/or to Transfer the Action for Forum Non Conveniens. In an Order dated February 10, 2005, the United States District Court for the Middle District of Florida (Orlando) concluded that it did not have personal jurisdiction over Defendants Clifford, Taub, and Mountain Island, and transferred the case to this Court on behalf of Defendant Anodyne based on the doctrine of *forum non conveniens*.

Defendants now move to dismiss Counts One through Three, arguing that these claims are barred by the applicable statute of limitations and/or are unenforceable for violation of the applicable Statute of Frauds.[4]

## II. DISCUSSION

**A.     Standard of Review**

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. *Suarez v. Charlotte-Mecklenburg Sch.*, 123 F. Supp. 2d 883, 885-86 (W.D.N.C. 2000) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the allegations in the

---

[3] Counts One through Four are brought against Defendant Anodyne, Count Five is brought against Defendant Clifford individually, Count Six is against Defendant Taub individually, Count Seven is against both Defendants Taub and Clifford individually, and Count Eight is brought against Defendant Anodyne, Defendant Clifford individually, and Defendant Taub individually.

[4] Notably, this is the argument that Defendants make in their Motion to Dismiss. However, in Defendant Anodyne's Reply, there is no discussion of the statute of limitations and Anodyne moves to only dismiss Counts One and Three based on the Statute of Frauds. In any event, a review of footnote one in Defendant Anodyne's Reply leads the Court to presume that Defendant Anodyne seeks to dismiss Counts One, Two, and Three. (*See* Def. Anodyne's Reply p. 2, fn. 1)(stating "[t]o the extent counts IV through VII are not predicated on the validity/ enforceability of those alleged agreements [described in counts I through III], the Defendants withdraw their motions to dismiss counts IV through VIII at this time"). Consequently, Counts Four through Eight are not before the Court for consideration.

4

complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *See GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "[Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.*, 226 F. Supp. 2d 785, 788-89 (4th Cir. 2002) (brackets in original) (quoting *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)).

Here, despite the fact that all Defendants filed the Motion to Dismiss, in Defendant Anodyne's Reply, it admits that it is seeking to dismiss only Counts One through Three. (Def. Reply p. 2, fn. 1). Counts One through Three are all against Defendant Anodyne. Consequently, the Court will only address the law and principles applicable to Anodyne.

**B.     Choice of Law**

The United States District Court for the Middle District of Florida (Orlando) determined that it had personal jurisdiction over Defendant Anodyne but transferred the case to this Court based on the doctrine of *forum non conveniens*, pursuant to 28 U.S.C. § 1404(a).[5] Even though the action was transferred from the Florida court to the Western District of North Carolina, the choice-of-law rules of the original forum continue to apply. *Linnell v. Sloan*, 636 F.2d 65, 66 (4th Cir. 1980) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); *Kline v. Wheels by Kinney, Inc.*, 464 F.2d 184 (4th Cir. 1972)). Therefore, this Court will apply Florida law in regard to Defendant Anodyne's Motion to Dismiss.

---

[5]The Florida court determined that it did not have jurisdiction over the other Defendants, thus this analysis of choice of law is inapplicable to those Defendants. However, since the Court is only addressing Counts One through Three, which solely implicate Defendant Anodyne, this Court will not review the choice of law principles applicable to the other Defendants.

C.  **Statute of Limitations**

Relying on Florida Statute Section 95.11(4)(c), Defendant Anodyne moves to dismiss Counts One through Three of Plaintiff's Complaint for failure to meet the two year statute of limitations. In pertinent part, Section 95.11(4)(c) provides as follows:

Actions other than for recovery of real property shall be commenced as follows: ...

**(4) Within two years. –**
. . . (c) An action to recover wages or overtime or damages or penalties concerning payment of wages and overtime.

Fla. Stat. § 95.11(4)(c). "This statute and its predecessor [Fla. Stat. § 95.11(7)(b)] were intended to apply to claims for wages or overtime earned for services rendered, . . . or claims for improper withholding of wages such as during periods of suspension." *Hullinger v. Ryder Truck Rental, Inc.*, 548 So. 2d 231, 233 (Fla. 1989) (citing *Gow v. County of Dade*, 371 So. 2d 493 (Fla. 3d DCA 1979), *cert. denied*, 383 So. 2d 1195 (Fla.), *cert. denied*, 449 U.S. 850, 101 S. Ct. 139, 66 L. Ed. 2d 61 (1980)). Thus, Section 95.11(4)(c) only applies to compensation for hourly wages to be paid in short-term installments. *Broward Builders Exch., Inc. v. Goehring*, 231 So. 2d 513, 514 (Fla. 1970). Moreover, this statute does not bar contract actions where the plaintiff seeks to recover for salary or sums payable pursuant to a contract. *Broward*, 231 So. 2d at 514; *see also Hullinger*, 548 So. 2d at 233 (noting that the fact that plaintiff's damages may include or even be limited to recovery for such quantifiable injuries such as the wages he lost had he not been discharged does not mean that his claim is one "to recover wages").

In the instant case, and taken in the light most favorable to Plaintiff, Demarse is not seeking to recover "wages" in Counts One and Two but rather is attempting to recover for sums payable pursuant to a contract. As explained above, such contract action does not fall within the

confines of Section 95.11(4)(c).

With regard to Count Three of the First Amended Complaint, Plaintiff brought his action for unpaid wages pursuant to Florida Statute Section 448.08. (First Am. Compl. ¶¶ 133-39). Section 448.08 is governed by a four year statute of limitations. *See* Fla. Stat. § 95.11(3)(f). Therefore, Count Three is not barred by Section 95.11(4)(c). Consequently, Defendant Anodyne's Motion to Dismiss based on Florida Statute Section 95.11(4)(c) is <u>denied</u>.[6]

**D.      Statute of Frauds**

Defendant Anodyne also seeks to dismiss Counts One and Three of Plaintiff's First Amended Complaint for failure to comply with Florida's Statute of Frauds. Florida's Statute of Frauds provides in pertinent part as follows:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat. § 725.01. "'[T]he Statute of Frauds applies only to contracts not to be performed on either side within the year, and has no application to contracts which by intent were fully performed within the year on one side.'" *Steinberg v. Kearns*, 907 So. 2d 691, 693 (Fla. Dist. Ct. App. 2005) (quoting *Yates v. Ball*, 132 Fla. 132, 181 So. 341, 345 (1937)). "The purpose of the Statute of Frauds is to intercept the frequency and success of actions based on nothing more than loose verbal statements and mere innuendo, *Yates v. Ball*, 132 Fla. 132, 181 So. 341, 344 (1937), and should be strictly construed to accomplish its purpose." *Hesston Corp. v. Roche*, 599 So. 2d

---

[6] A discussion of the applicable statute of limitations for Counts One and Two is unnecessary as Defendant Anodyne did not argue that those Counts are barred by any other Florida statute.

148, 152 (Fla. Dist. Ct. App. 1992) (citing *Rowland v. Ewell*, 174 So. 2d 78, 80 (Fla. 2d DCA 1965)).

Defendant Anodyne contends that the Business Plan - and specifically the payment terms regarding Plaintiff's salary - is subject to the Statute because an agreement for payment two years in the future cannot be performed within one year. (Def. Reply p. 3). Defendant Anodyne further contends that Plaintiff's lack of a writing signed by Anodyne fails to meet the requirements of Florida's Statute of Frauds. (*Id.*). Notably, however, Defendant Anodyne does not argue that the provision within the contract providing for the delivery of stock to Plaintiff falls within the Statute of Frauds.

In response, Plaintiff argues that both the contract for the delivery of stock and the contract for payment of salary do not fall within the Statute of Frauds because the first obligation is for an indefinite period and the other is capable of being performed within one year. (Pl. Resp. pp. 10-16). Plaintiff further maintains that even if the Statute of Frauds applies, not only is the agreement in writing on company letterhead but the part performance exception removes the agreement from the confines of the Statute of Frauds. (*Id.*).

### 1. Count Two – Payment of stock

The Business Plan provides that Defendant Anodyne will give Plaintiff 40,000 shares of stock, which is equal to four percent (4%) ownership in the Company. Taken in the light most favorable to Plaintiff, this provision could certainly be performed within one year. Moreover, Defendant Anodyne does not seem to dispute the fact that the provision regarding stock falls outside Florida's Statute of Frauds. (*See* Def. Reply pp. 2-6) (arguing only for dismissal of Counts One and Three based on Statute of Frauds). Therefore, the Court will not dismiss Count

8

Two as barred by the Statute of Frauds.

### 2. Counts One and Three – Payment of salary

Taken in the light most favorable to Plaintiff, the Business Plan, which was agreed to by Plaintiff and Defendants, is on Anodyne letterhead and has the terms regarding payment of Plaintiff's salary clearly written. Specifically, the Business Plan provides:

> *Mr. Demarse is paid $75,000/Year deferred until 5/15/02 and will be paid in one payment of $150,000. Should funds not be available, Mr. Demarse will receive $75,000 in shares of stock at $1.00/share and paid $15,000/Yr for 5 years.

(First Am. Compl. Exh. 1, p. 2). Moreover, the final revision of the Business Plan occurred on July 11, 2000, and in the absence of any allegation to the contrary and taken in the light most favorable to Plaintiff, that is the date the parties entered into the agreement, including the terms of Plaintiff's salary.

According to this agreement, Plaintiff was to be paid for his work at and/or involvement with Anodyne. (*Id.* ¶ 55). Specifically, Plaintiff was to receive a lump sum of $150,000 on May 15, 2002, which was more than 22 months after the formation of the alleged contract.[7] According to the Business Plan, Plaintiff's annual salary was $75,000. Therefore, to earn the $150,000, Plaintiff would have to work for two years. Consequently, the Court concludes that taken in the light most favorable to Plaintiff, the terms of the Business Plan created a contract that could not be performed within one year. Therefore, the alleged agreement is subject to the Statute of Frauds.

Despite this conclusion, the Court notes that since this is a motion to dismiss, the parties have not yet engaged in discovery. Accordingly, it is possible that Defendants have within their

---

[7] In the alternative, Plaintiff could have received payment of his salary over a five year period.

possession documents that, standing alone or in conjunction with the Business Plan, may satisfy the requirements of the Statute of Frauds.[8] The fact that such documentation has not been presented to the Court, or even to Plaintiff, is irrelevant to Defendants' Motion to Dismiss.[9] As such facts are not fully developed before the Court, a motion to dismiss on grounds of the Statute of Frauds is premature at this stage of litigation.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is hereby **DENIED**.

Signed: February 9, 2006

Richard L. Voorhees
Chief United States District Judge

---

[8] In making this statement, the Court is not ruling on whether the Business Plan, standing alone, is sufficient to satisfy the Statue of Frauds.

[9] Notably, Florida law has not determinatively stated whether the required writing under the Statute of Frauds must be delivered to all parties to the contract. In fact, many courts conclude that since the Statute of Frauds only requires a sufficient writing signed by the party to be charged, where such writing is produced, the requirements of the statute are satisfied and there is no need for a plaintiff to prove delivery of the writing to satisfy the statute of frauds. *See* WILLISTON ON CONTRACTS, NECESSITY OF DELIVERY OF MEMORANDUM, § 29:7 (June 2005).